[File No. Cr. 201]

STATE OF NORTH DAKOTA, Respondent, v. LOUIE AVE, Appellant.

(21 NW2d 352)

Opinion filed January 8, 1946

*Paul Campbell,* for appellant.

*Nels Johnson,* Attorney General, and *Joseph J. Funke,* State's attorney, for respondent.

BURR, J. The defendant was convicted of the crime of rape in the first degree and duly sentenced. The court overruled his motion for a new trial, and he appealed from the order denying the new trial, and from the judgment.

As his grounds for a new trial, he alleges:

"1. The Court erred in its decisions of questions of law arising during the course of the trial.

2. The Court has done and allowed to be done acts in this action prejudicial to the substantial rights of the defendant.

3. The verdict herein is contrary to law.

4. The verdict herein is clearly against the evidence in said action."

The defendant sets forth twelve specifications of error on which he relies to show the alleged prejudicial acts done. Many of these have no basis in the record before us, such as errors in the selection of the jury, permitting certain of the State's witnesses to testify, denial of the stay of passing of sentence, etc.

The allegations set forth in numbers two and three have no merit, except in so far as the admission of two classes of testimony is said to be prejudicial—a matter to which we refer later.

The State endorsed on the information the name of Mrs. Harvey Fricke as one of the witnesses as known to it at the time of filing information. The State had her present at the trial but did not call her as a witness in its main case. The defendant objected to this failure claiming it was error. The defendant also issued a subpoena for her and called her as his witness. No demand was made on the State to use her as a witness, and the State called her on rebuttal as its own witness.

The State is not required to call as its witness everyone whose name is endorsed on the information. The general principle discussed in State v. McGahey, 3 ND 293, 302 et seq., 55 NW 753, and State v. Kapelino, 20 SD 591, 108 NW 335, is applicable here. There was no error here.

There was ample evidence in the case to require the submission of the case to the jury and to support the verdict.

The claim of prejudicial error in admission of testimony is

based on the State's attempt to impeach defendant's witness, his wife, and the State's examination of its witness Cash.

The wife of the defendant had been called by the defendant as his own witness and was cross-examined by the State. In referring to her conversation with Mrs. Fricke the State, on this cross-examination, interrogated as follows:

"Q. And in that conversation last Wednesday afternoon, did you say to Mrs. Fricke, 'I know my husband is guilty of this and I hope he gets a rap so he will leave me alone.'

A. No, I did not say that.

Q. Did you say anything similar to that?

A. Similar to what?

Q. Did you say something about like that?

A. No, I never.

Q. You never made any statement that you knew your husband was guilty?

A. I never mentioned it.

Q. Or that you hoped he would be convicted?

A. No.

Q. Did you ever say that to Mrs. Fricke?

A. Not that I ever remember.

Q. Not that you remember of?

A. No.

Q. May it have been true?

A. How?

Q. What is that?

A. I didn't hear what you said.

Q. Is it true you might have said that?

A. No.

Q. You deny ever making that statement?

A. No.

The Court: She may have misunderstood your last question.

Question read: You deny ever making that statement?

The Court: Do you deny or do you not deny it?

A. I do not deny it.

The Court: You do not deny that you made that statement?

A. That I ever said that.

The Court: You do deny you made it?

A. Yes." ·

She reiterated her denial on re-examination by counsel for the defense. She was recalled by the State for further cross-examination, as follows:

"Q. Mrs. Ave, did you at any time since November 7, have any talk—September 7—have any talk with Mrs. Fricke about this lawsuit?

A. No, not that I remember of.

Q. Didn't you ride home with her yesterday or day before yesterday?

A. I rode home with her yesterday? She rode with us.

Q. Didn't you have some talk about it then?

A. No."

The defense apparently was willing to permit this examination. Immediately thereafter the State called Mrs. Fricke for direct examination as its own witness. During this examination she was asked if Mrs. Ave had talked with her "regarding the matter of this lawsuit," and to state what was said. The defendant interposed an objection stating:

"Just a minute now. That is objected to as wholly incompetent, irrelevant and immaterial not made in the presence of this defendant; not in any manner binding. An attempt to get in an impeachment on collateral matters and apparently not proper rebuttal testimony."

The court sustained this objection. The State proceeded:

"Q. Mrs. Fricke, at that time and place and in the presence of yourself and Mrs. Ave did she make a statement to you regarding this lawsuit?"

The court overruled a similar objection to this question and the witness was then asked, "What was this statement?" The same objection was interposed here and overruled and the court permitted her to answer as follows:

"A. She said that if her husband was to get a sentence out of this, she hoped he got his sentence out of it so that she could get a rest because he had been cruel to her."

On objection of the defendant, that this was an attempt to

impeach on a collateral matter, this answer was stricken out and the jury cautioned to disregard it. The State proceeded as follows:

"Q. At that time and in the presence of those two people, did Mrs. Ave make any further statements regarding the guilt or innocence of the defendant on this charge?

Mr. Campbell: Same objection.

The Court: Overruled.

A. Yes, she did.

Q. State what she said.

Same objection. Not in the presence of the defendant, not in any manner binding on him and not proper impeachment testimony and an attempt to impeach on a wholly collateral matter.

The Court: Overruled.

Question read: State what she said.

A. She said she figured he was guilty.

Mr. Campbell: I move to strike out the answer on the same reasons given and being highly prejudicial.

The Court: Motion denied."

Thus the State interjected into this case alleged statements of defendant's wife as to her wishes and his guilt, and this over the strenuous objection of the defendant.

The issue was the guilt or innocence of the defendant, not the opinion of his wife as to his guilt. The defense did not object to this questioning of the wife on this matter and she denied the giving of that opinion. Her opinion was a matter collateral to the real issue, and it is well settled a witness may not be impeached on collateral matter. The defendant did not cover the matter in direct examination. The State was precluded from such an attack by her answers.

The situation here is covered fully by the holding in State v. Tucker, 58 ND 82, 224 NW 878. There we show that,

"Where, upon cross-examination, a witness is asked concerning statements to a third party which were not covered in his direct examination, the cross-examiner may not impeach the witness who denied the making of such statement by proving the contrary."

It is argued that this was permissible in order to affect the credibility of Mrs. Ave.

In Becker v. Cain, 8 ND 615, 617, 80 NW 805, 806, we note with approval this statement from Greenleaf on Evidence,

"It is a well settled rule that a witness can not be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And, if a question is put to a witness which is collateral or irrelevant to the issue, his answer can not be contradicted by the party who asked the question, but it is conclusive against him."

See also Schnase v. Goetz, 18 ND 594, 120 NW 553.

As stated in State v. Haynes, 7 ND 70, 76, 72 NW 923, 925,

"A witness is not to be cross-examined as to any distinct collateral facts for the purpose of afterwards impeaching his testimony by contradicting him."

The evidence showed that defendant, his wife, his children and the girl involved had driven from Velva to Minot and it was charged the rape was committed on this trip. The defendant nowhere admitted the commission of the crime. His testimony was an unequivocal denial of the girl's testimony. To inform the jury that his wife, who was a member of the party on the trip and a witness on his behalf, believed him guilty would have very serious effect. The admission of such testimony was so prejudicial in its nature that the verdict must be set aside and a new trial granted.

There is another matter raised by the defendant with reference to the admission of testimony which we deem advisable to discuss; as on the new trial an attempt may be made to introduce similar testimony. On rebuttal the State called one Everett Cash as a witness and after showing the witness's knowledge of the defendant inquired as follows:

"Q. State whether or not you know the defendant's reputation for chastity and for morality in his home vicinity."

The witness answered, "Yes." The defendant had not put his reputation in issue. Nowhere had he been examined on

such matter. The witness was then asked and answered as follows:

"Q. What is the defendant's reputation for chastity and morality in his home vicinity?

A. Well, he is not dependable for one thing, quite a drinker.

Mr. Campbell: I move the answer be stricken.

The Court: Motion granted. I think the answer has to be good or bad. You can't go into detail. By the way, the jury will wholly disregard the answer of this witness, because the answer was improper.

A. His reputation is not good in the community."

The defendant made no objection to this type of inquiry and thereafter went into a very lengthy examination of this witness in order to ascertain the basis for his testimony. While the defendant now urges this testimony in regard to his reputation as ground for reversal we hold that as he made no objection whatever to having the matter of "chastity and morality" brought out, in fact appeared to be willing to have his reputation examined, and decided to attack the witness's knowledge and thus himself brought out testimony showing his own quarrelsome nature and his addiction to intoxicating liquors, it is too late for him to object to this testimony, having apparently consented to the examination. Nevertheless the State has no right to attack a defendant's reputation until he has put it in issue himself.

The defendant did not put his own character in issue. It is sufficient to state this rule as set forth in 22 CJS 1069, "As a general rule, however, the good or bad character of accused is never an issue to which the State may offer evidence unless accused chooses to make it an issue."

Thus on the new trial such an attack should not be permitted, unless defendant first puts his reputation in issue.

Because of the error pointed out herein, the judgment must be reversed and a new trial is granted.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.