Filed 1/19/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 12

Cary Lyon, Plaintiff and Appellee

v.

Ford Motor Company, Defendant and Appellant

No. 990125

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Ralph R. Erickson, Judge.

DISMISSED.

Opinion of the Court by Neumann, Justice.

Marnell W. Ringsak, Severin, Ringsak & Morrow, P.O. Box 2155, Bismarck, N.D. 58502-2155, for plaintiff and appellee.

John D. Sear (argued), Bowman & Brooke, 150 S. 5th, Ste. 2600, Minneapolis, MN 55402, and Jonathan P. Sanstead (on brief), Pearce & Durick, P.O. Box 400, Bismarck, N.D. 58502-0400, for defendant and appellant.

Lyon v. Ford Motor Company

No. 990125

Neumann, Justice.

[¶1] Ford Motor Company (“Ford”) appealed from a judgment awarding Cary Lyon $10,360.84 in property damages.  Because Ford voluntarily satisfied the judgment before appealing, we conclude Ford waived its right to appeal.  We therefore dismiss the appeal.

I

[¶2] On January 30, 1996, Lyon’s 1994 Mercury Topaz van was destroyed by fire while it was parked unoccupied in a Fargo parking lot.  Lyon brought this action against Ford, seeking compensation for property damage.  The action was based on theories of negligence, strict liability and breach of warranty.  At the December 1998 trial, the court denied Ford’s motion for judgment as a matter of law under N.D.R.Civ.P. 50(a)(1), and submitted to the jury Lyon’s theories of strict liability, negligence, negligent failure to warn and breach of warranty.

[¶3] The jury returned a verdict in favor of Lyon on his strict liability claim, finding the Mercury Topaz van was defective and the defect caused Lyon’s damages.  The jury also found Ford was not negligent, did not negligently fail to warn Lyon, and although Ford breached an express or implied warranty, that breach did not cause any damages.

[¶4] Judgment in favor of Lyon for $10,360.84 was entered on February 24, 1999.  Lyon requested payment from Ford the following day after receiving notice of entry of judgment.  Ford paid Lyon the entire amount of the judgment on March 15, 1999, and Lyon filed a satisfaction of judgment on March 18, 1999.  On April 27, 1999, this Court issued its decision in 
Clarys v. Ford Motor Company
, 1999 ND 72, 592 N.W.2d 573, holding the economic loss doctrine, which bars product liability tort claims when the only damage alleged is to the product itself, applies to consumer purchases.  Ford filed its notice of appeal on April 30, 1999, and later received from the trial court an extension to file its notice of appeal under N.D.R.App.P. 4.

[¶5] Relying on 
Clarys
, Ford argues the trial court erred in denying its motion for judgment as a matter of law because Lyon’s product liability tort claim was barred by the economic loss doctrine.  Lyon has moved to dismiss Ford’s appeal, arguing Ford waived its right to appeal by voluntarily satisfying the judgment.

II

[¶6] This Court’s decisions on the effect of the payment or satisfaction of a judgment on a party’s right to appeal have not been consistent.

[¶7] The most recent, and the longest line of North Dakota cases applies the general rule that a party who voluntarily pays a judgment against him waives the right to appeal from the judgment.
(footnote: 0)  
See
 
Dakota Northwestern Bank Nat’l Ass’n v. Schollmeyer
, 311 N.W.2d 164, 166 (N.D. 1981); 
St. Vincent’s Nursing Home v. Department of Labor
, 168 N.W.2d 265 (N.D. 1969); 
Messer v. Henlein
, 72 N.D. 63, 66, 4 N.W.2d 587, 588-89 (1942); 
In re McKee’s Estate
, 69 N.D. 203, 208, 285 N.W. 72, 74 (1939); 
Grady v. Hansel
, 57 N.D. 722, 725, 223 N.W. 937 (1929); 
Signor v. Clark
, 13 N.D. 35, 45-46, 99 N.W. 68, 71-72 (1904); 
Rolette County v. Pierce County
, 8 N.D. 613, 615, 80 N.W. 804, 805 (1899).  Contrary to the 
Schollmeyer
 line of authority, however, other cases in this jurisdiction indicate voluntary payment or satisfaction of a judgment does not waive the right to appeal, if repayment may be enforced or the effect of compliance may be otherwise undone in case of reversal, and unless the payment was intended as a compromise or there was an express agreement to not pursue an appeal.  
See
 
Workman v. Salzer Lumber Co.
, 51 N.D. 280, 282-83, 199 N.W. 769, 770 (1924); 
Fisk v. Fehrs
, 32 N.D. 119, 129, 155 N.W. 676, 678-79 (1915); 
State ex rel. Wiles v. Albright
, 11 N.D. 22, 24-26, 88 N.W. 729, 731-32 (1901).

[¶8] Courts in other jurisdictions apply various rules to determine whether payment or satisfaction of a judgment either constitutes a waiver of the right to appeal from the judgment or renders the appeal moot.  
See, e.g.
, Annot., 
Defeated party’s payment or satisfaction of, or other compliance with, civil judgment as barring his right to appeal
, 39 A.L.R.2d 153 (1955), and cases collected therein; 5 Am.Jur.2d 
Appellate Review
 § 623 (1995).  Some of the most prevalent rules were summarized by the court in 
Lytle v. Citizens Bank of Batesville
, 630 S.W.2d 546, 547 (Ark. App. 1982):

Some jurisdictions hold that the payment of a judgment under any circumstances bars the payer’s right to appeal.  However, in the majority of jurisdictions, the effect of the payment of a judgment upon the right of appeal by the payer is determined by whether the payment was voluntary or involuntary.  In other words, if the payment was voluntary, then the case is moot, but if the payment was involuntary, the appeal is not precluded.  The question which often arises under this rule is what constitutes an involuntary payment of a judgment.  For instance, in some jurisdictions the courts have held that a payment is involuntary if it is made under threat of execution or garnishment.  There are other jurisdictions, however, which adhere to the rule that a payment is involuntary only if it is made after the issuance of an execution or garnishment.  Another variation of this majority rule is a requirement that if, as a matter of right, the payer could have posted a supersedeas bond, he must show that he was unable to post such a bond, or his payment of the judgment is deemed voluntary.

See also
 
Metropolitan Development & Housing Agency v. Hill
, 518 S.W.2d 754, 760-

66 (Tenn. App. 1974).

[¶9] A minority of courts have expressed a view similar to the one taken by this Court in 
Workman
, 
Fisk
 and 
Albright
, holding unless payment of a final judgment by a judgment debtor is shown to be made with the intent to compromise or settle the matter and to abandon the right to appeal, or the payment in some way makes relief impossible in case of reversal, the payment will not be deemed to either waive the right to appeal or moot the controversy.  
See, e.g.
, 
Dakota County v. Glidden
, 113 U.S. 222, 224-25 (1885); 
Grand River Dam Authority v. Eaton
, 803 P.2d 705, 709-10 (Okl. 1990); 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2905, at pp. 525-26 (1995).  The courts which follow the minority rule reason allowing the appeal after payment or satisfaction of the judgment simplifies matters by saving the costs of an execution and placing the funds immediately in the hands of the party who, if the appeal fails, will be ultimately entitled to them.  
Eaton
, 803 P.2d at 709.  They also reason failing to post a supersedeas bond is immaterial because posting a supersedeas bond is neither a prerequisite to nor a jurisdictional requirement for an appeal.  
Id.
; 
see also
 
Workman
, 51 N.D. at 282-83, 199 N.W. at 770 (holding voluntary acquiescence in a judgment does not preclude appeal, in part because former N.D. Comp. Laws 1913, § 7826, which is substantially identical to N.D.R.Civ.P. 62(f), permits appeals without obtaining a stay).

[¶10] We reject the minority view, represented in North Dakota by 
Workman
, 
Fisk
 and 
Albright
, for both theoretical and practical reasons.  The majority of courts view a judgment that is paid and satisfied of record as ceasing to have any existence.  
See
 
Dorso Trailer Sales v. American Body & Trailer, Inc.
, 482 N.W.2d 771, 773 (Minn. 1992).  Our statutory scheme similarly provides “[a] civil action in a district court is deemed to be pending from the time of its commencement until its final determination upon appeal or until the time for appeal has passed, 
unless the judgment is sooner satisfied
.”  N.D.C.C. § 28-05-10 (emphasis added).  Because a satisfaction of judgment extinguishes the claim, the controversy is deemed ended, leaving the appellate court with nothing to review.  
See
 
Becker v. Halliday
, 554 N.W.2d 67, 69 (Mich. App. 1996).

[¶11] The majority rule also promotes the interests of certainty and finality, and the judicial policy of furthering the intentions and legitimate expectations of the parties.  
See
 
Dooley v. Cal-Cut Pipe & Supply, Inc.
, 593 P.2d 360, 362 (Colo. 1979).  The rule that a judgment debtor waives the right to appeal is intended to prevent a party who voluntarily pays a judgment from later changing his mind and then seeking the court’s aid in recovering payment.  
See
 
McCallum v. Western Nat’l Mut. Ins. Co.
, 597 N.W.2d 307, 309 (Minn. App. 1999); 
Riner v. Briargrove Park Property Owners, Inc.
, 858 S.W.2d 370 (Tex. 1993).  The Supreme Court of Texas reasoned in 
Highland Church of Christ v. Powell
, 640 S.W.2d 235, 236 (Tex. 1982), “[a] party should not be allowed to mislead his opponent into believing that the controversy is over and then contest the payment and seek recovery.”

[¶12] There are existing avenues judgment debtors may pursue to protect themselves from judgment collection efforts during the pendency of an appeal.  A supersedeas bond, which may be obtained under the provisions of N.D.R.Civ.P. 62 and N.D.R.App.P. 8, is designed to maintain the status quo and protect the judgment holder against any loss it may sustain as a result of an unsuccessful appeal.  
See
 
Berg v. Berg
, 530 N.W.2d 341, 343 (N.D. 1995).  Judgment debtors also have the option of having the judgment released as a lien against their property by depositing sufficient funds with the clerk of the district court in which the judgment is entered.  
See
 N.D.C.C. § 28-20-29.  Although neither avenue is a jurisdictional prerequisite to an appeal, we see no utility in judicially authorizing yet another avenue for protection from judgment collection efforts during the pendency of an appeal, which would result in little more than a rash of restitution suits for recovery of voluntary payments on later-reversed judgments.  We agree with the reasoning of the dissent in 
Eaton
, 803 P.2d at 712 (Opala, Vice Chief Justice, concurring and dissenting in part):

The two statutory methods for 
suspending
 a judgment pending appeal cast on the 
judgment debtor
 the responsibility of 
securing the principal as well as the interest that will be due at litigation’s end.
  By allowing the obligation’s voluntary payment, the court implicitly holds that in the event of reversal the liability for interest will shift 
to the judgment creditor
 who will then be bound to make restitution of both the principal and the accrued interest.  In my view, the court’s pronouncement favors the 
wrong
 parties.  
It accommodates judgment debtors
—the parties whose appeal 
prolongs
 the litigation’s end.  It is they who are 
relieved
 today from having to pay mid-appeal interest on affirmed judgments—an obligation they would bear if judgment were 
not paid
 but 
secured
 by either of the two statutory law’s authorized methods.  Creditors, on the other hand, do not fare as well; they will be 
stuck
 with mid-appeal interest when compelled to make restitution following a judgment’s reversal.  Unlike the court, I would leave undisturbed the legislative allocation of duty to secure mid-appeal interest.  It should remain imposed on the appealing debtor.  
The party whose appeal postpones the obligation’s legal finality should, in the event of affirmance, bear the onus of paying interest accruable during the period between the judgment and mandate dates.

(Emphasis in original; footnote omitted).

[¶13] We believe the majority view, represented in North Dakota by the 
Schollmeyer
 line of cases, is the better rule and we reaffirm that a party who voluntarily pays a judgment against him waives the right to appeal from the judgment.  This view is shared by our sister states.  
See, e.g.
, 
Bartel v. New Haven Tp.
, 323 N.W.2d 806, 809 (Minn. 1982); 
Turner v. Mountain Engineering and Const., Inc.
, 915 P.2d 799, 804-

05 (Mont. 1996); 
Ray v. Sullivan
, 568 N.W.2d 267, 270-72 (Neb. App. 1997); 
Foster Lumber Co., Inc. v. Glad
, 303 N.W.2d 815, 816 (S.D. 1981).  This Court’s decisions in 
Workman
, 
Fisk
 and 
Albright
 are overruled to the extent they conflict with the 
Schollmeyer
 line of cases and the majority rule.

[¶14] While a party who voluntarily pays a judgment waives the right to appeal, payment of a judgment under coercion or duress is not a waiver of the right to appeal.  
See
 
Schollmeyer
, 311 N.W.2d at 166.  The burden is on the party moving to dismiss the appeal to show the judgment was voluntarily paid and satisfied.  
See
 
Grady
, 57 N.D. at 725, 223 N.W. at 938.  Whether a judgment has been voluntarily paid and satisfied depends on the facts and circumstances of the particular case.  
See
 
Signor
, 13 N.D. at 45, 99 N.W. at 71.  Where there is no showing other than that the judgment was paid, a presumption arises that the payment was voluntary.  
Grady
.

[¶15] It is undisputed Ford did not pay the judgment because Lyon initiated judgment collection procedures.  Lyon did not execute on the judgment.  
Compare
 
Grady
 (holding payment of judgment to sheriff armed with an execution is not voluntary so as to work waiver of the right to appeal).  Lyon requested payment from Ford, but made no threats of using legal process to collect the judgment.  Although Ford sought to avoid accrued interest on the judgment and the “public relations disaster” which would have ensued if Lyon used legal process to enforce the judgment, these circumstances cannot fairly be interpreted as coercion or duress sufficient to render the payment involuntary.  
See
 
Poppa Builders, Inc. v. Campbell
, 692 N.E.2d 647, 649-50 (Ohio App. 1997).  These same allegedly coercive circumstances could be claimed in virtually any case, and Lyon was entitled to request payment because he had a right to payment of the money.  
See
 
Campbell
.  Nothing in the record suggests Ford was unable to seek a supersedeas bond or deposit a sufficient amount with the clerk of district court, which would have stayed any enforcement of the judgment.  Ford’s payment of the judgment itself certainly indicates it had the financial ability to post an adequate appeal bond.

[¶16] Rather, the record indicates Ford’s payment was intended solely as a voluntary satisfaction of the judgment.  When it satisfied the judgment, Ford did not indicate to Lyon in any manner it intended to reserve its right to appeal.  Indeed, it appears Ford had no intention of appealing when it satisfied the judgment.  Ford did not decide to appeal until this Court issued its decision in 
Clarys
 more than one month after Ford paid Lyon.  The circumstances here are a classic example of what the majority rule was designed to prevent: allowing a party who voluntarily satisfied a judgment to change its mind and seek the court’s aid in recovering payment.

[¶17] Under the circumstances of this case, we conclude Ford voluntarily paid and satisfied the judgment, thereby waiving its right to appeal from the judgment.

III

[¶18] Lyon’s  request for attorney fees under N.D.R.App.P. 38 for defending a frivolous appeal is denied.  The appeal is dismissed.

[¶19] William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

FOOTNOTES
0:     
This principle is a variation of the similar general rule that one who accepts a substantial benefit of a judgment waives the right to appeal from the judgment.  
See,e.g.
, 
White v. White
, 434 N.W.2d 361, 363-64 (N.D. 1989); 
Geier v. Geier
, 332 N.W.2d 261, 264 (N.D. 1983).  Even though the acceptance-of-benefits rule of waiver is conceptually related to the voluntary-payment-or-satisfaction-of-judgment rule of waiver, we have sharply limited the acceptance-of-benefits rule to promote a strong policy in favor of reaching the merits, particularly in domestic relations appeals.  
See, e.g.
, 
Wetzel v. Wetzel
, 1999 ND 29, ¶ 5, 589 N.W.2d 889; 
Bangen v. Bartelson
, 553 N.W.2d 754, 757 (N.D. 1996); 
Sulsky v. Horob
, 357 N.W.2d 243, 245 (N.D. 1984).  The limited application of the acceptance-of-benefits rule is justified in divorce cases because it is unreasonable for an appellant to have to choose between economic adversity and the right to appeal.  
See
 
Spooner v. Spooner
, 471 N.W.2d 487, 489-90 (N.D. 1991).  Because of the obvious dissimilarity between satisfying a judgment in total and merely accepting some benefit of a multifaceted divorce judgment, and because of the absence of the policy considerations present in divorce cases, we find the acceptance-

of-benefits cases unhelpful in resolving the issue in this case.